**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| HOLLIE LEDBETTER, an individual; | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| CALHOUN COUNTY, ALABAMA, | )CIVIL ACTION NO. |
| an Alabama county; | ) |
| CALHOUN COUNTY COMMISSION, | )     05-HS-0005 |
| the governing body of Calhoun County; | ) |
| LARRY AMERSON, an individual; | ) |
| BRUCE BARTLIFF, an individual; | ) |
| CORRECTIONAL OFFICER  HANSON, | ) |
| an individual; | ) |
| CORRECTIONAL OFFICER MADDOX, | ) |
| an individual; | ) |
| CORRECTIONAL OFFICER CLEMMONS, | ) |
| an individual; | ) |
| CORRECTIONAL OFFICER WALKER, | ) |
| an individual; | ) |
| CORRECTIONAL OFFICER MARITATE, | ) |
| an individual; and, | ) |
| CORRECTIONAL OFFICER BURCHFIELD, | ) |
| an individual; | ) |
| | ) |
|    Defendants. | ) |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

This case is before the Court on the Motion to Dismiss of Defendants

Larry Amerson, Sheriff of Calhoun County, Bruce Barclift, Jail Administrator

of the Calhoun County Jail, and Correctional Officer Kelly Birchfield.

The Complaint in this case alleges the use of excessive force against, and

the assaulting and raping of, a pregnant 19 year old woman while she was incarcerated in the Calhoun County Jail.  *Complaint*, at ¶ 19.

## II.    STANDARD OF REVIEW

A Motion to Dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove ***no set of facts in support of his claim*** which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added).  The threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.,* 711 F.2d 989, 995 (11th Cir.1983)).  "When a federal court reviews the sufficiency of a complaint before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)(overruled on other grounds).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.  Moreover, it is well established that in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the

subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.* (emphasis added).

## III.   ALLEGATIONS OF THE COMPLAINT

Larry Amerson, Sheriff of Calhoun County, is sued in his individual capacity only, and only under Federal law.  Bruce Barclift, Jail Administrator of the Calhoun County Jail, is sued in his individual capacity only. Correctional Officer Kelly Birchfield is sued in his individual capacity only.

Count II of the Complaint alleges a cause of action under 42 U.S.C. § 1983 for violation of the Plaintiff's Eighth and Fourteenth Amendment Rights. This Count is alleged against Defendants Amerson and Bartliff only.  Count III of the Complaint alleges a cause of action under 42 U.S.C. § 1983 for violation of the Plaintiff's Eighth and Fourteenth Amendment Rights.  This Count is alleged against Defendant Burchfield, among others.  Lastly, the Complaint also alleges various state law claims against certain Defendants.

In pertinent part, the Complaint states as follows:

17.   During all of the events made the basis of this suit, Ms. Ledbetter was incarcerated at the Calhoun County Jail ("Jail").

18.   In December 2002, January 2003, February 2003, March 2003, April 2003 and May 2003, Ms. Ledbetter, was an

inmate at the Jail.

19.   While an inmate, Ms. Ledbetter, was repeatedly assaulted and repeatedly required to perform sexual acts, including sexual intercourse, on multiple male jail staff members.

20.   From November of 2002 until January 2003, she was in a general cell in the general population at the jail.

21.   From late January 2003 until May 2003, Plaintiff was moved to a private cell next to the "booking" location.

22.   In late January of 2003 it was determined that Ms. Ledbetter was pregnant.   Ms. Ledbetter was taken to her obstetrician, Dr. Daniels, by Defendant Maddox, a male Correctional Officer.  Defendant Maddox came with her into the examination room while she undressed for her examination by her physician.   This was done over a nurse's objection.  While Ms. Ledbetter was undressing, Correctional Officer Maddox mentioned that he had been watching her in the jail shower while she bathed naked.

23.   About four or five days after Ms. Ledbetters' examination at Dr. Daniels' office, Defendant Maddox made inappropriate physical contact with Ms. Ledbetter by rubbing her breast and other parts of her body in the shower room.

24.   Approximately one week later, Defendant Maddox had sexual intercourse with Ms. Ledbetter while in a private cell near the booking area.

25.   While an inmate at the Jail, after she was moved in late January 2003, Defendant Hanson, another Male Correctional Officer, came to Ms. Ledbetter's cell and asked if she wanted some water.   Defendant Hanson took Ms. Ledbetter to the fingerprinting room under the guise of getting Ms. Ledbetter a drink of water.  Defendant Hanson then asked her to perform a sexual act for him as she had performed a sexual act for Defendant

Maddox.   When Ms. Ledbetter refused, Defendant Hanson threatened Ms. Ledbetter physically and said that he would "allege that she had attempted to escape or had done something wrong". Ms. Ledbetter was made to feel that she would be punished and harmed physically if she did not perform the sexual act on Defendant Hanson.   Accordingly, she did so against her will and in violation of her constitutional rights.   While Ms. Ledbetter was performing a fellatio act upon Defendant Hanson, Correctional Officer Rowe ("Rowe") came upon them and took Ms. Ledbetter back to her jail cell.   Rowe took Defendant Hanson away and asked Correctional Officer Kofer, who was a female Correctional Officer, to go to Ms. Ledbetter's cell and talk to her about the situation.

26.   The   following day after this event, Defendant Bartliff came to Ms. Ledbetter's cell to talk to her about the sexual assault by Defendant Hanson and asked if Ms. Ledbetter would agree to a lie detector test.   She agreed.

27.   Two weeks after the event, Defendant Bartliff and an unidentified man not in uniform came to the Jail for Ms. Ledbetter and she gave a videotaped and recorded statement regarding the sexual assault by Defendant Hanson which was videotaped and recorded.   Defendant Bartliff and the unidentified man requested that Ms. Ledbetter give them certain clothes from her to test for DNA.   Defendant Bartliff and the unidentified man questioned Ms. Ledbetter about Defendants Hanson and Maddox, and the inappropriate sexual activities with both, as well as inappropriate sexual acts done by other inmates with Correctional Officers.

28.   While an inmate at the Jail and in the private cell next to the "booking" room, Ms. Ledbetter was beaten on several occasions.   Ms. Ledbetter had been given instructions from her obstetrician that she would need plenty of drinks of water and bathroom breaks during her pregnancy.   On one occasion, Ms. Ledbetter was attempting to get the attention of the Correctional Officers to come to her cell and allow her to go to the bathroom. At that time she was not allowed to go to the bathroom.   She was

required to urinate in her cell.

29.    On another occasion in late January of 2003, Ms. Ledbetter was in front of her cell when Defendants Walker and Clemmons choked her because she had requested to use the bathroom.  Defendants Walker and Clemmons refused to allow Ms. Ledbetter to go to the bathroom and while strapping her to a chair Defendants Walker and Clemmons punched her on the legs and physically abused her.

30.    In February of 2003, Ms. Ledbetter was again attempting to get the Correctional Officers' attention that she needed a bathroom break.  Defendants Maritate and Burchfield handcuffed Ms. Ledbetter's feet.  Defendants Maritate and Burchfield threatened Ms. Ledbetter with physical abuse while strapping Ms. Ledbetter to a chair with force that was excessive and unneeded.  She was bruised and battered.

## IV .   ANALYSIS

### A.    State Law Claims Against Barclift and Birchfield

The Plaintiff concedes that these claims are due to be dismissed. Accordingly, the Motion to Dismiss the State Law Claims against Defendants Barclift and Birchfield will be **GRANTED**, and these claims will be **DISMISSED, with prejudice**.

### B.    Claims for Injunctive Relief Against All Defendants

The Plaintiff agrees that these claims are due to be dismissed. Accordingly, the Motion to Dismiss all claims for injunctive relief against all Defendants will be **GRANTED**, and these claims will be **DISMISSED, with**

**prejudice**.

### C.      Qualified Immunity and the Section 1983 Claims

#### 1.      Whether the Plaintiff's Complaint Meets the Eleventh Circuit's Pleading Requirement.

The Defendants first argue that the Section 1983 claims against the Defendants should be dismissed because the Complaint, "on its face, does not meet the Eleventh Circuit's pleading standard for § 1983 cases involving qualified immunity." *Defendants' Brief*, at 2.

The Eleventh Circuit has stated:

> However, while Fed.R.Civ.P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. *See Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992) (citing *Arnold v. Bd. of Educ.,* 880 F.2d 305, 309 (11th Cir.1989)). Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right. Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement. *See id.*

*GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998).  In more recent years the Court has held:

In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998). The complaint must allege the relevant facts "with some specificity." *Id.* "[M]ore than mere conclusory notice pleading is required.... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir.1984). *See also Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir.1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). Moreover, in reviewing a motion to dismiss, we need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001). We must also keep in mind the fact that "[w]e generally accord ... official conduct a presumption of legitimacy." *United States Dep't of State v. Ray,* 502 U.S. 164, 179, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991).

*Gonzalez v. Reno*, 325 F.3d 1228, *1235 (11ᵗʰ Cir. 2003).

The Defendants contend that the "Plaintiff has failed to identify any particular policy of [sic] custom of Sheriff Amerson that lead to the alleged violations of the Plaintiff's rights. The Plaintiff has also sprinkled conclusory allegations throughout her Complaint without providing any factual allegations in support." *Defendants' Brief*, at 4.

As to Amerson and Bartliff, the Complaint, at Count II, states as follows:

8

40.    At all times mentioned herein, Defendants Amerson and Bartliff acted under color of Alabama law as Sheriff of Calhoun County.   Under Alabama law, Defendant Amerson and/or Bartliff had direct control over the operations of the Calhoun County Jail and its correctional officers and/or jailers, and were responsible for setting policy and enforcing compliance with regulations of the Calhoun County Jail, and for ensuring that the Correctional Officers of the Calhoun County Jail, obey the laws of the State of Alabama, the United States Constitution and the laws of the Untied States of America.  As such, Defendants Amerson and Bartliff were the commanding officers of the Correctional Officers at the Calhoun County Jail, and were responsible for the appointing, directing, overseeing, hiring, managing, training, supervising, and directing the conduct of the Correctional Officers.

41.    In addition, Defendants Amerson and Bartliff were charged with setting policy and custom at the Calhoun County Jail.  As such they allowed a history of widespread abuse to occur and a custom or policy to occur as follows: the failure to properly monitor and protect inmates from correctional officer physical contact, abuse, relationships and sexual contact.

42.    Defendant Amerson's and Bartliff's failure to properly appoint, direct, oversee, hire, manage, train and supervise employees, as well as their creation of a policy and custom at the Calhoun County Jail that created a lawless environment – allowing for deliberate indifference of Plaintiff's constitutional rights to bodily integrity and to be free from cruel and unusual punishment – violated 42 U.S.C. §1983.

*Complaint*, at 10-11.  As to Defendant Birchfield, the Complaint, at Count III,

states as follows:

45.    The conduct of the Defendants was deliberately indifferent to Ms. Ledbetter's constitutionally protected rights while a female inmate in the Calhoun County Jail.  Such actions

include, but are not limited to, the following: (1) male Correctional Officers Maddox and Hanson had personal relationships with, and/or sexual contact, assault and intercourse with, Ms. Ledbetter; (2) Correctional Officer Hanson raped Ms. Ledbetter; (3) Correctional Officers Clemmons, Walker, Meritate and Burchfield knowingly and willfully failed to allow Ms. Ledbetter to have water or bathroom breaks while pregnant (and when directed by her obstetrician); (4) Correctional Officers Clemmons, Walker, Meritate and Burchfield knowingly and willfully violated Ms. Ledbetter's constitutionally protected rights when they used unneeded and excessive force in attempting to restrain her, and physically abused Ms. Ledbetter, after she requested water and/or bathroom breaks; (5) ; Correctional Officer Maddox watched Ms. Ledbetter while she bathed to clean herself; and (6) Correctional Officer Maddox knowingly and willfully violated Ms. Ledbetter's constitutionally protected right to privacy when he watched her undress at her doctor's appointment without legal justification to do so.

46.    As a direct and proximate result of the actions and/or omissions of Defendants as set forth in this document, Ms. Ledbetter endured unnecessary and wanton infliction of pain, stress, anxiety, and fear.

47.    The actions of the Defendants as set forth above were intentional, wanton and malicious, and violated her constitutionally protected rights and liberties.

*Complaint*, at 11-12.

When taken together, the Court is convinced that these Counts sufficiently allege relevant facts with at least "some specificity", as required by the applicable case law.

**2.      Whether the Defendants Are Entitled to Qualified Immunity in this Case.**

10

### a.      Outline of the Law of Qualified Immunity

### i.      Complete   Protection   to Governmental Officials Sued in Their Individual Capacity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

*Wood v. Kesler,* 323 F.3d 872, 877 (11th Cir. 2003).

### ii.      Purpose of Qualified Immunity

"The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

*Wood,* 323 F.3d at 877.

That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities. Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (officials "generally are shielded from liability for civil damages"); *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989) ("The *Harlow* decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983."); *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323- 24 (11th Cir.1989) (when "no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where [First Amendment case

law] would lead to the inevitable conclusion that the [act taken against] the employee was unlawful"). Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. *See Malley v. Briggs,* 475 U.S. 335, 341-43, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d 271 (1986). Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.

*Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994)

While qualified immunity almost always applies in damage claims against government actors in their individual capacities, the defense is a narrow one, leaving plaintiffs other avenues of relief. Plaintiffs remain free (subject to Eleventh Amendment constraints) to seek money damages against government actors in their official capacity. Plaintiffs may also seek injunctive relief.

*Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1149 n.

2 (11th Cir. 1994).

### iii.    How a Defendant Can Receive Qualified Immunity

### (a)    Burden Shifting Analysis

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks omitted). . . . "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

*Id.*

> **(1)  Defendant's Burden to Prove Scope of the Official's Discretionary Authority**

The Eleventh Circuit Court of Appeals has recently restated the law as follows:

> Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. *See *1266 Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties *and* within the scope of this authority." (emphasis added)).

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

> Consider the first prong of the test--whether the official is engaged in a legitimate job-related function. In *Sims v. Metropolitan Dade County,* 972 F.2d 1230 (11th Cir.1992), "we did not ask whether

13

it was within the defendant's authority to suspend an employee for an improper reason; instead, we asked whether [the defendant's] discretionary duties included the administration of discipline." *Harbert,* 157 F.3d at 1282. Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities. *See, e.g., Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997). Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description.

Of course, we must be sure not to characterize and assess the defendant's act at too high a level of generality. Nearly every act performed by a government employee can be described, in general terms, as ostensibly "furthering the public interest." If we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. Consequently, we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use *excessive* force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests. *See, e.g., Ferraro,* 284 F.3d at 1194 (holding, in an excessive force suit, "there can be no doubt that [the police officer defendant] was acting in his discretionary capacity when he arrested [plaintiff]").

After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related

function--that is, pursuing his job-related goals--in an authorized manner. The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when exercising powers that legitimately form a part of their jobs. *See, e.g., Harlow,* 457 U.S. at 819 & n. 34, 102 S.Ct. at 2739 & n. 34 (limiting the availability of qualified immunity to situations where "an official's duties legitimately require action" and to "actions within the scope of an official's duties"). Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

Employment by a local, county, state, or federal government is not a *carte blanche* invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity.

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 -1267 (11th Cir. 2004).

> **(2)   Plaintiff's Burden to Show Qualified Immunity Not Appropriate**
>
> –   **Whether the Plaintiff's Allegations, If True, Establish a Constitutional Violation.**

The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v.*

*Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

*Wood*, 323 F.3d at 877 -878.

> –       **Was the Right Clearly Established?**

However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " *Vinyard,* 311 F.3d at 1346 (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151).

*Id.* at 878.

For a "right" to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added). "[I]n the light of pre-existing law the unlawfulness must be apparent." *Id.* As the en banc court recently explained:

> When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. *See, e.g., Edwards v. Gilbert,* 867 F.2d 1271, 1277 (11th Cir.1989). Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

*Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1575

(11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993). Put differently, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

*Rodgers v. Horsley,* 39 F.3d 308, 310 -311 (11th Cir. 1994) (finding no clearly established right where Plaintiff had failed to show that at the time of the alleged tort the law was clearly established because she pointed to no bright line established by pre-existing case law that would make it "apparent" to the defendants that what they were doing (or failing to do) was unlawful).  If there is no such bright line shown, a plaintiff can overcome qualified immunity "only by showing that the official's conduct lies so obviously at the very core of what the [law] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997).

### b.    Application of Qualified Immunity to the Instant Case.

The Defendants have failed to make the initial showing that their conduct, as alleged in the Complaint, fell within their discretionary authority. As is pointed out above, the Qualified Immunity analysis is a *burden shifting* analysis.  The failure of the Defendants to offer proof, or even allege that their conduct falls within their discretionary authority, does not establish the defense of qualified immunity, nor shift the burden to the Plaintiff to rebut same.  Under these circumstances, the Court cannot find that the Defense of Qualified Immunity is appropriate.  As to that ground, the Motion to Dismiss will be DENIED.

**D.     Eighth Amendment Claims and Section 1983**

The Defendants next contend that "[b]ecause the alleged misconduct occurred prior to Plaintiff's conviction, the Eighth Amendment was not, and has not, been implicated.  Eighth Amendment protections do not attach until after conviction and sentencing." *Defendants' Brief*, at 9.  The Eleventh Circuit, however, has held that pre-trial detainees' claims may be properly analyzed under the Eighth Amendment.  *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).  Accordingly, this aspect of the Defendants Motion to Dismiss is due to be DENIED.

**E.     Claims for Punitive Damages Under Section 1983**

Concerning the propriety of punitive damages in Section 1983 cases it has been held:

> Making no distinction between claims against him in his official capacity versus claims against him in his individual capacity, the Sheriff contends that a suit against him is a suit against the state and, therefore, no punitive damages can be awarded. If this were true, no damages could be awarded at all. There is, however, a distinction between official capacity claims, which the Court has ruled are due to be dismissed on Eleventh Amendment immunity grounds, *supra* p. 1163, and individual capacity claims, as to which punitive damages are permissible. *See Colvin v. McDougall,* 62 F.3d 1316, 1319 (11th Cir.1995).

*Gaines v. Choctaw County Com'n*, 242 F.Supp.2d 1153, 1166 (S.D.Ala. 2003).

Punitive damages claims against the Defendants in their individual capacities

are acceptable.  As to this point, the Motion to Dismiss is due to be DENIED.

## IV.   CONCLUSION

For the above stated reasons the Motion to Dismiss of the Defendant will

be **GRANTED in part and DENIED in part**.

DONE this 19th day of April, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge